IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA JACKSON and E. LYNN SCHOENMANN, in her capacity as trustee of the bankruptcy estate of Pamela Jackson,<br><br>Plaintiffs,<br><br>v.<br><br>WILSON, SONSINI, GOODRICH & ROSATI LONG TERM DISABILITY PLAN and PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendants.<br>_____/ | No. C 08-01607 JSW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is the motion for summary judgment filed by Pamela Jackson and E. Lynn Schoenmann's (collectively "Plaintiff") and cross-motion for summary judgment filed by Defendant Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan and Prudential Insurance Company of America (collectively "Defendants"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

**BACKGROUND**

This action arises from the denial of Plaintiff's claim for benefits under the Long Term Disability Plan ("the Plan") through Prudential Insurance Company of American ("Prudential") provided by Ms. Jackson's employer, Wilson, Sonsini, Goodrich & Rosati LLP ("WSG&R").

Plaintiff brought this action to challenge the termination of her claim for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

The Plan provides long term benefits to qualified WSG&R employees if they suffer from "Total Disability" within the meaning of the term in the Plan. The Plan states that "'Total Disability' exists when Prudential determines that all of these conditions are met:

(1) Due to Sickness of accidental injury, both of these are true:
    (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
(2) You are not working at any job for wage or profit.
(3) You are under the regular care of a Doctor.

(AR at 14.)[1]

Plaintiff worked for WSG&R as a help desk analyst from 1979 until December 17, 1997, when she left her work due to pain and numbness associated with a back condition. (*Id.* at 177.) On March 17, 1998, Plaintiff submitted her claim for long term disability benefits, indicating she suffered from "back pain causing numbness/loss of sensation due to ongoing problems from ruptured disk." (*Id.* at 483.) Prudential initially approved her claim on April 10, 1998, but terminated her long term benefits on March 23, 1999. (*Id.* at 496-98.) During her three appeals, Prudential continued to affirm its denial decision. (*Id.* at 168-170, 193-95, 357-62.)

On March 31, 1998, Plaintiff underwent back surgery. (*Id*. at 61.) On June 24, 1998, Plaintiff's treating physician, Dr. Kenneth I. Light, who also performed the surgery, examined Plaintiff and reported that she was doing well and had normal sensory, motor and deep tendon reflexes as well as good strength in her legs. (*Id.* at 113.)

Again, on August 5, 1998, Dr. Light examined Plaintiff and noted that she was recovering very well from surgery and that her neurological examination was normal. The doctor documented that he expected Plaintiff would be able to return to work in January 1999

---

[1] The Court cites throughout the order to the Administrative Record ("AR") by the final digits of the document. The Court quotes from the Plan documents it has previously found operative in its order dated May 20, 2009.

2

1  with restriction limited to repetitive bending and lifting limited to approximately 30 pounds.
2  (*Id.* at 114.)

3         On September 16, 1998, Dr. Light again examined Plaintiff and indicated that she
4  complained of some slight increase in pain and further numbness, but noted she was doing
5  reasonably well and had good strength and reflexes. (*Id.* at 115.) The x-rays showed no change
6  in the position of her spine and indicated that the bone graft was healing well. (*Id.*)

7         Again, on December 16, 1998, Dr. Light noted that upon examination, Plaintiff was
8  doing well and was stronger, with normal strength in her legs and normal reflexes and again
9  posed no restrictions beyond repetitive bending and lifting of more than 20 pounds. (*Id.* at 117.)

10        However, on January 13, 1999, the month that Plaintiff was due to return to work, Dr.
11 Light documented that although her flex touching and reflexes were normal, Plaintiff
12 complained of increased pain in her back and leg. (*Id.* at 118.) Dr. Light recommended
13 additional testing. (*Id.*)

14        On January 26, 1999, Dr. Light again examined Plaintiff and noted that x-rays and a CT
15 scan failed to account for her self-reported symptoms. (*Id.* at 119.) Instead, the tests revealed
16 solid fusion that the bone grafts were fully incorporated. (*Id.*)

17        On February 24, 1999 and again on March 10, 1999, Dr. Light reviewed Plaintiff's tests
18 ordered as a result of her subjective complaints of pain and numbness, but indicated that the
19 tests failed to account for her symptoms. (*Id.* at 121-22.) On March 10, 1999, Dr. Light
20 suggested that Plaintiff return to work where she could do intermittent sitting, standing and
21 walking. (*Id.* at 122.) While Dr. Light noted Plaintiff's subjective complaints, he noted that
22 there was "no ongoing compression of the spinal cord, and I see no areas where progression of a
23 neurologic problem would occur." (*Id.*) From the records of Plaintiff's treating physician, it is
24 clear that the objective tests and examinations did not support her self-reported symptoms of
25 pain and numbness.

26        Upon receipt of the claim and the appeals, Prudential reviewed and evaluated the
27 medical information submitted and noted that there was no objective evidence to support
28 Plaintiff's complaints. On March 22, 1999, Prudential determined that, based on the medical

1    records submitted, a vocational report, and WSG&R's job description, she was not precluded
2    from performing the material and substantial duties of her occupation. (*Id.* at 79.) Although
3    Plaintiff reported pain, her physical restrictions were limited to the lifting of no more than 20
4    pounds and having the ability to move about. (*Id.*) Thus, Prudential found Plaintiff did not
5    meet the definition of Total Disability under the Plan and her long term benefits could be
6    terminated. (*Id.*)

7    On March 23, 1999, Prudential informed Plaintiff that she was no longer eligible to
8    receive long term benefits beyond April 30, 1999 because the medical evidence submitted and
9    reviewed did not preclude her from engaging in the work required of her at her occupation. (*Id.*
10   at 496-98.) Prudential noted that her treating physician recommended she return to work with
11   only mild restrictions and also noted that the objective tests conducted did not support her
12   complaints of impairment or present medical evidence of a condition that would prevent her
13   from engaging in her occupation. (*Id.*)

14   On May 21, 2003, Plaintiff's counsel submitted an appeal of Prudential's decision with
15   additional documentation from Dr. Light as well as another job description. A further report
16   from Dr. Light indicated that Plaintiff was complaining of ongoing pain and was unable to
17   return to work. (*Id.* at 127.) At that time, Dr. Light indicated that a needle injection to
18   Plaintiff's spinal cord may have contributed to the problems. (*Id.*) After collection and review
19   of further documentation regarding Plaintiff's proper job description and medical records,
20   Prudential upheld its decision to deny benefits. Prudential found that, although the record
21   contained Plaintiff's subjective complaints of pain, the medical records and objective test
22   results indicated that Plaintiff was improving and had demonstrated functionality consistent
23   with her job description. (*Id*. at 168-170.)

24   On August 7, 2003, Plaintiff's counsel submitted a second appeal, with the addition of a
25   letter dated July 23, 2003 from Dr. Light indicating, for the first time that he concluded Plaintiff
26   was 100% disabled as she suffered neurogenic pain following a spinal injection which enabled
27   her to sit only up to 10 minutes at a time. (*Id.* at 165.) Prudential then requested an
28   independent file review from Dr. Patrick M. Foye, who found that Plaintiff's objective medical

4

tests failed to confirm any injury or abnormalities to the spinal cord following the spinal cord injection. (*Id*. at 183-89.) Dr. Foye also noted that the medical records indicated proper healing after surgery and normal neurologic status despite Plaintiff's reporting of her subjective symptoms. (*Id*.) Dr. Foye found the medical records did not support Dr. Light's sitting restrictions and did not support claims of impairment. Based on this further review and independent examination of the medical records, Prudential again sustained its decision and denied Plaintiff's request for long term disability benefits under the Plan. (*Id*. at 193-95.)

Although there was subsequent correspondence between Plaintiff and Prudential and further review of the medical records, Prudential upheld its initial decision and found that the medical documentation submitted by Plaintiff did not substantiate a physical impairment that would prevent her from performing the duties of her occupation. (*Id.* at 93-94.)

At her third and final appeal, Plaintiff reiterated her former position, indicated that Prudential had improperly considered the wrong job description in evaluating her claim, and sought further review. (*Id.* at 289-340.) Prudential had performed another independent file review by a orthopedic surgeon, Dr. David Bauer, who specialized in spine surgery. Dr. Bauer opined that Plaintiff's medical records did not support a finding of significant impairment precluding her from functioning with restrictions of sitting and intermittent walking and stretching throughout the day. (*Id*. at 344-48.) Again, Dr. Bauer found that Plaintiff's subjective complaints of pain were extreme and unsupported by the results of her objective medical tests. (*Id.*) The reviewing doctor further found that any restrictions on her functioning were fully compatible with possible restrictions of her position. (*Id.*)

The Court will address any additional specific facts as required in the analysis.

## ANALYSIS

**A.      Legal Standard on Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.     Legal Standard Under Rule 52.**

In the alternative, pursuant to Federal Rule of Civil Procedure 52, Plaintiff moves for judgment in her favor. Under Rule 52, the Court conducts what is essentially a bench trial on

6

the record, evaluating the persuasiveness of the conflicting testimony and deciding which is more likely true. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999) (holding that such a bench trial on the record may consist of no more than the trial judge rereading [the administrative record].")

**C.    Standard of Review.**

ERISA allows a participant in an employee benefit scheme to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). In its order dated November 24, 2008, this Court determined that the review of Prudential's decision to deny benefits must be *de novo*. Courts review a denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Here, because there is no dispute that the Plan does not confer discretion on Prudential, the insurer, or on anyone else and there is no discretion vested in anyone in the Plan documents, ERISA defaults to a *de novo* standard of review. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (holding that absent a discretionary clause, the default standard of review of a claims determination in an ERISA policy is *de novo*).

A court employing a *de novo* standard of review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Generally, the court's review is limited to the evidence contained in the administrative record. *Opeta v. Northwest Airlines pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007). In "reviewing the administrative record, the Court evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Schramm v. CNA Financial Corp. Insured Groups Benefits Program*, __ F. Supp. 2d __, 2010 WL 2433126, *10 (N.D. Cal. June 14, 2010).

1    In an ERISA case involving *de novo* review, the plaintiff has the burden of showing
2 entitlement to benefits. *See, e.g., Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F.
3 Supp. 2d 1222, 1232 (N.D. Cal. 2003).

**C.    Denial of Coverage Decision Reviewed *de Novo*.**

Based on this Court's review of the administrative record, it is clear that the medical information in Plaintiff's file does not support the severity of her complaints or indicate that she is unable to perform the material and substantial duties of her occupation. The records of physical examination findings, x-rays, MRIs, neurologic exams, and CT scans do not support the severity of Plaintiff's subjective complaints. Prudential obtained the opinions of various medical evaluators, including two independent specialists, to assess whether the medical records supported Plaintiff's subjective complaints. The objective medical evidence in the record, upon which Prudential based its denial of long term disability coverage and the Court affirms, fails to substantiate Plaintiff's self-reported symptoms. *See, e.g., Maniatty v. Unumprovident Corp.*, 218 F. Supp. 2d 500, 504 (S.D. N.Y. 2002) (holding that it was reasonable for administrator not to accept conclusions of treating physicians who reached their diagnoses based solely on their acceptance of plaintiff's subjective complaints).

Further, the medical evidence in the record indicates that, even with the limitations imposed upon Plaintiff due to her subjective complaints about pain, she was able to perform the material and substantial duties of her employment. The only restriction was that Plaintiff could not lift over 20 pounds and she had to be able to move about intermittently. (AR at 122.) The Court finds that, even with these limited restrictions, Plaintiff could have performed the material duties of her job and therefore, under the definition in the Plan, was not qualified for long term disability benefits. *See, e.g, Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877 (9th Cir. 2003) (holding that an independent review of the record upheld administrator's conclusion that plaintiff was not disabled from performing the material duties of her job as a result of her diagnosed condition).

The sole physician who, contradicting his former opinion, later indicated that he believed Plaintiff may have suffered from a long-term disabling condition was Dr. Light. (AR

8

1  at 127, 521.)  Although Dr. Light acted as her treating physician, his findings are not accorded
2  greater deference.  The treating physician rule, which Plaintiff argues is applicable in the
3  ERISA context, requires "deference to the opinions of claimant's treating physician, because
4  'he is employed to cure and has a greater opportunity to know and observe the patient as an
5  individual.'" *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1139
6  (9th Cir. 2001), (quoting *Morgan v. Commissioner of Social Security Admin.*, 169 F.3d 595, 600
7  (9th Cir. 1999)).

8  However, an ERISA plan administrator is not required to defer to the opinion of a
9  treating physician in the context of making a benefits determination.  *See Black & Decker*
10 *Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (holding that although Plan administrators
11 "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a
12 treating physician,... courts have no warrant to require administrators automatically to accord
13 special weight to the opinions of claimant's physician; nor may courts impose on plan
14 administrators a discrete burden of explanation when they credit reliable evidence that conflicts
15 with a treating physician's evaluation").  It appears from the record and from Dr. Light's change
16 of position as Plaintiff came closer to the date at which she was to return to work, that
17 "physicians accept at face value what patients tell them about their symptoms; but
18 [administrators] must consider that applicants are exaggerating in an effort to win benefits (or
19 are sincere hypochondriacs not at serious medical risk)."  *See Leipzig v. AIG Life Ins. Co.*, 362
20 F.3d 406, 409 (7th Cir. 2004).

21 Regardless, under the *de novo* standard of review, the Court finds there is sufficient
22 evidence in the record to sustain Prudential's denial of benefits.  Therefore, Defendants' motion
23 for summary judgment is GRANTED and Plaintiff's motion for summary judgment is
24 DENIED.

**D.     Social Security Offset.**

Plaintiff applied for and received Social Security Disability benefits ("SSDI"). (AR at 295.)[2] The Plan provides for an offset of long term disability benefits based on an award of SSDI. (*Id.* at 23-27.) As Prudential paid Plaintiff benefits without an SSDI offset from June 1, 1998 through April 1999, this resulted in an over-payment of benefits in the amount of $14,680.39. (*Id.* at 376-77.) However, because Prudential merely requested an offset to any judgment in Plaintiff's favor, and did not counterclaim for reimbursement, the Court will not order reimbursement.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED. Judgment shall be entered in favor of Defendants Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan and Prudential Insurance Company of America. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 27, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff contends that Prudential erred in finding she was not disabled where she satisfied the standards required by the Social Security Administration ("SSA"). (AR PRUJ000295.) However, while the determination by the SSA may be considered, it is not determinative of whether Plaintiff is entitled to ERISA disability benefits under the Plan. *See, e.g., Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285-86 (9th Cir. 1990); *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 637 (9th Cir. 2009).