UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA JACKSON, ET AL., | No. C-08-01607 JSW (JCS) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** |
| WILSON, SONSINI, GOODRICH & ROSATI LONG TERM DISABILITY PLAN, ET AL. | **[Docket No. 88]** |
| Defendants. | |
| _____/ | |

## I.    INTRODUCTION

This action arises out of the termination of Plaintiff Pamela Jackson's long-term disability benefits by Defendant Wilson, Sonsini, Goodrich & Rosati Long Term Disability Plan ("the Plan"), which is funded by insurance purchased from Defendant Prudential Insurance Company of America ("Prudential"). The action was brought by Ms. Jackson and the trustee of her bankruptcy estate, Lynn Schoenmann ("Trustee"), which asserted an interest in any recovery Ms. Jackson might obtain in the action.[1] Plaintiff's claim is asserted under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Court entered summary judgment in favor of Defendants in an order filed August 27, 2010, and judgment was entered in favor of Defendants on the same day. Subsequently, Defendants filed the instant motion ("the Motion"), requesting an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing set for February 18, 2011 is **vacated**. For the reasons stated below, it is recommended that the Motion be DENIED.

---

[1] Hereinafter, references to "Plaintiff" in the singular are to Ms. Jackson.

## II.    BACKGROUND

### A.    Factual Background

The underlying facts of this action are set forth in detail in the Court's summary judgment order, which states as follows:

> This action arises from the denial of Plaintiff's claim for benefits under the Long Term Disability Plan ("the Plan") through Prudential Insurance Company of American ("Prudential") provided by Ms. Jackson's employer, Wilson, Sonsini, Goodrich & Rosati LLP ("WSG&R"). Plaintiff brought this action to challenge the termination of her claim for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).
>
> The Plan provides long term benefits to qualified WSG&R employees if they suffer from "Total Disability" within the meaning of the term in the Plan.  The Plan states that "'Total Disability' exists when Prudential determines that all of these conditions are met:
>
> > (1) Due to Sickness of accidental injury, both of these are true:
> >
> > > (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
> >
> > (2) You are not working at any job for wage or profit.
> >
> > (3) You are under the regular care of a Doctor.
>
> ([Administrative Record] at 14.)
>
> Plaintiff worked for WSG&R as a help desk analyst from 1979 until December 17, 1997, when she left her work due to pain and numbness associated with a back condition. (*Id.* at 177.)  On March 17, 1998, Plaintiff submitted her claim for long term disability benefits, indicating she suffered from "back pain causing numbness/loss of sensation due to ongoing problems from ruptured disk." (*Id.* at 483.) Prudential initially approved her claim on April 10, 1998, but terminated her long term benefits on March 23, 1999. (*Id.* at 496-98.) During her three appeals, Prudential continued to affirm its denial decision. (*Id.* at 168-170, 193-95, 357-62.)
>
> On March 31, 1998, Plaintiff underwent back surgery. (*Id.* at 61.)  On June 24, 1998, Plaintiff's treating physician, Dr. Kenneth I. Light, who also performed the surgery, examined Plaintiff and reported that she was doing well and had normal sensory, motor and deep tendon reflexes as well as good strength in her legs. (*Id.* at 113.)
>
> Again, on August 5, 1998, Dr. Light examined Plaintiff and noted that she was recovering very well from surgery and that her neurological examination was normal. The doctor documented that he expected Plaintiff would be able to return to work in January with restriction limited to repetitive bending and lifting limited to approximately 30 pounds. (*Id.* at 114.)
>
> On September 16, 1998, Dr. Light again examined Plaintiff and indicated that she complained of some slight increase in pain and further numbness, but noted she was doing

2

reasonably well and had good strength and reflexes. (*Id*. at 115.) The x-rays showed no change in the position of her spine and indicated that the bone graft was healing well.(*Id*.)

Again, on December 16, 1998, Dr. Light noted that upon examination, Plaintiff was doing well and was stronger, with normal strength in her legs and normal reflexes and again posed no restrictions beyond repetitive bending and lifting of more than 20 pounds. (*Id.* at 117.)

However, on January 13, 1999, the month that Plaintiff was due to return to work, Dr. Light documented that although her flex touching and reflexes were normal, Plaintiff complained of increased pain in her back and leg. (*Id.* at 118.) Dr. Light recommended additional testing. (*Id*.)

On January 26, 1999, Dr. Light again examined Plaintiff and noted that x-rays and a CT scan failed to account for her self-reported symptoms. (*Id*. at 119.) Instead, the tests revealed solid fusion that the bone grafts were fully incorporated. (*Id*.)

On February 24, 1999 and again on March 10, 1999, Dr. Light reviewed Plaintiff's tests ordered as a result of her subjective complaints of pain and numbness, but indicated that the tests failed to account for her symptoms. (*Id*. at 121-22.) On March 10, 1999, Dr. Light suggested that Plaintiff return to work where she could do intermittent sitting, standing and walking. (*Id.* at 122.) While Dr. Light noted Plaintiff's subjective complaints, he noted that there was "no ongoing compression of the spinal cord, and I see no areas where progression of aneurologic problem would occur." (*Id*.) . . . .

Upon receipt of the claim and the appeals, Prudential reviewed and evaluated the medical information submitted and noted that there was no objective evidence to support Plaintiff's complaints. On March 22, 1999, Prudential determined that, based on the medical records submitted, a vocational report, and WSG&R's job description, she was not precluded from performing the material and substantial duties of her occupation. (*Id.* at 79.) Although Plaintiff reported pain, her physical restrictions were limited to the lifting of no more than 20 pounds and having the ability to move about. (*Id.*) Thus, Prudential found Plaintiff did not meet the definition of Total Disability under the Plan and her long term benefits could be terminated. (*Id.*)

On March 23, 1999, Prudential informed Plaintiff that she was no longer eligible to receive long term benefits beyond April 30, 1999 because the medical evidence submitted and reviewed did not preclude her from engaging in the work required of her at her occupation. (*Id.* at 496-98.) Prudential noted that her treating physician recommended she return to work with only mild restrictions and also noted that the objective tests conducted did not support her complaints of impairment or present medical evidence of a condition that would prevent her from engaging in her occupation. (*Id.*)

On May 21, 2003, Plaintiff's counsel submitted an appeal of Prudential's decision with additional documentation from Dr. Light as well as another job description. A further report from Dr. Light indicated that Plaintiff was complaining of ongoing pain and was unable to return to work. (*Id.* at 127.) At that time, Dr. Light indicated that a needle injection to Plaintiff's spinal cord may have contributed to the problems. (*Id*.) After collection and review of further documentation regarding Plaintiff's proper job description and medical records, Prudential upheld its decision to deny benefits. Prudential found that, although the record contained Plaintiff's subjective complaints of pain, the medical records and objective test results indicated that Plaintiff was improving and had demonstrated functionality consistent with her job description. (*Id*. at 168-170.)

3

On August 7, 2003, Plaintiff's counsel submitted a second appeal, with the addition of a letter dated July 23, 2003 from Dr. Light indicating, for the first time that he concluded Plaintiff was 100% disabled as she suffered neurogenic pain following a spinal injection which enabled her to sit only up to 10 minutes at a time. (*Id*. at 165.) Prudential then requested an independent file review from Dr. Patrick M. Foye, who found that Plaintiff's objective tests failed to confirm any injury or abnormalities to the spinal cord following the spinal cord injection. (I*d*. at 183-89.) Dr. Foye also noted that the medical records indicated proper healing after surgery and normal neurologic status despite Plaintiff's reporting of her subjective symptoms. (*Id*.) Dr. Foye found the medical records did not support Dr. Light's sitting restrictions and did not support claims of impairment. Based on this further review and independent examination of the medical records, Prudential again sustained its decision and denied Plaintiff's request for long term disability benefits under the Plan. (*Id*. at 193-95.)

Although there was subsequent correspondence between Plaintiff and Prudential and further review of the medical records, Prudential upheld its initial decision and found that the medical documentation submitted by Plaintiff did not substantiate a physical impairment that would prevent her from performing the duties of her occupation. (*Id*. at 93-94.)

At her third and final appeal, Plaintiff reiterated her former position, indicated that Prudential had improperly considered the wrong job description in evaluating her claim, and sought further review. (*Id*. at 289-340.) Prudential had performed another independent file review by a orthopedic surgeon, Dr. David Bauer, who specialized in spine surgery. Dr. Bauer opined that Plaintiff's medical records did not support a finding of significant impairment precluding her from functioning with restrictions of sitting and intermittent walking and stretching throughout the day. (*Id*. at 344-48.) Again, Dr. Bauer found that Plaintiff's subjective complaints of pain were extreme and unsupported by the results of her objective medical tests. (*Id*.) The reviewing doctor further found that any restrictions on her functioning were fully compatible with possible restrictions of her position. (*Id*.)

Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Cross-Motion for Summary Judgment, filed August 27, 2010 ("Summary Judgment Order") at 1-5.

### B. The Summary Judgment Order

On August 27, 2010, the Court granted Defendants' summary judgment motion and denied Plaintiff's summary judgment motion. The Court concluded that the objective medical evidence in the record did not substantiate the severity of Plaintiff's self-reported pain symptoms, stating, "[i]t is clear that the medical information in Plaintiff's file does not support the severity of her complaints or indicate that she is unable to perform the material and substantial duties of her occupation. Docket No. 78 at 8. On this basis, the Court sustained the denial of benefits by Defendants. *Id*. at 10. The Court acknowledged, however, that Plaintiff's treating physician had submitted a letter finding that Plaintiff was totally disabled, and that the Social Security Administration had also made a finding of disability. *Id*. at 4, 5 & 10 n.2. Further, the Court denied Defendants' request for

4

reimbursement of benefits that were overpaid as the result of a Social Security offset, noting that Defendants had not asserted a counterclaim for reimbursement against Plaintiff but instead had only requested an offset against any judgment that might be entered in Plaintiff's favor. *Id*. at 10.

### C. The Motion for Attorneys' Fees

In the Motion, Defendants request an award of attorneys' fees under ERISA's attorney fee provision, 29 U.S.C. § 1132(g), because they achieved complete success in the case and the factors set forth in *Hummell v. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir. 1980) support an award of fees and costs. Motion at 7. The *Hummell* factors instruct courts to consider the following five factors: 1) the degree of opposing party's bad faith or culpability; 2) the ability of the opposing party to satisfy a fee award; 3) the deterrent effect of a fee award; 4) whether the party requesting fees sought to benefit all participants and beneficiaries of the plan or to resolve a significant legal question; and 5) the relative merits of the parties' positions. *Id*. at 7 (citing *Hummell*, 634 F.2d at 453). According to Defendants, all of these factors support an award of fees. *Id*.

First, Defendants argue that while a finding of culpability or bad faith is not necessary to award fees, this factor supports an award of fees because the evidence in support of Defendants was overwhelming. *Id*. at 7-8. Second, Defendants argue that although Plaintiff may not be able to satisfy a full fee award, they are entitled an award of a discounted amount in any event. In particular, Defendants state that the requested fees ($53,944.25 in attorneys' fees and $15,219.70 in non-taxable costs) represent only 25% of fees incurred and that this amount is also reasonable because Plaintiff owes Defendants $14,680.39 in overpayments under the Plan. Third, Defendants assert that a fee award against Plaintiff in this case will not deter others from pursuing meritorious claims because the evidence against Plaintiff in this case is overwhelming. *Id*. at 9. Fourth, according to Defendants, their defense in this action benefitted the other plan beneficiaries to the extent the assets of the Plan were protected from a claim for benefits that was not meritorious. *Id*. at 10. Finally, Defendants prevailed after a full adjudication on the merits in which the Court determined that Defendants' position had merit and the Plaintiff's did not. *Id*. at 11-12. Defendants

5

also assert that their fee request is reasonable, both in terms of the rates charged and the time spent. *Id*.

In her Opposition, Plaintiff asserts that a fee award is not appropriate in this case based on the *Hummel* factors. First, Plaintiff asserts that she was not culpable and did not act in bad faith in claiming disability benefits but rather, had a reasonable belief that her claim was meritorious. Opposition at 2-3. In support of this contention, Plaintiff cites to medical evidence in the record that supports her symptoms, the finding of disability by the Social Security Administration and the credibility of Ms. Wilson's pain testimony, arguing that the Court erred in finding that the evidence supporting Defendants' denial of benefits was "clear." *Id*. at 8-11. Plaintiff also argues that the cases cited by Defendants in connection with this factor are distinguishable because they involved fraudulent claims. *Id*. at 2-3.

Second, Plaintiff argues that she is "destitute" and cannot afford to pay any fees. *Id*. at 11. In particular, Ms. Jackson states in her declaration as follows:

> 3. My total monthly income is my Social Security disability benefit of $1,345.60. My regular ongoing monthly expenses total approximately $1,145, and the approximate $200 remainder is devoted to buying food and paying for prescription medications.
>
> 4. I own no real estate, have no savings or retirement accounts, and have no other assets.
>
> 5. Following Prudential's termination of my LTD benefits, I was compelled to sell my condominium and otherwise exhaust all resources, including credit cards, savings, and retirement accounts, in order to survive. My credit rating has been ruined. Moreover I have had to file for bankruptcy. It is my opinion that Prudential's termination of my disability benefits, which I believe in good faith to have been improper, has destroyed any financial security I may have otherwise hoped for.
>
> 6. I cannot possibly afford to pay anything on account of Prudential's attorney fees in this matter.

Declaration of Pamela Jackson in Opposition to Attorney Fee Motion ("Jackson Decl."), ¶¶ 3-6.

Third, Plaintiff argues that an award of fees would deter conduct that ERISA is intended to promote to the extent that it will discourage individuals who reasonably believe that they are entitled to benefits (like Plaintiff in this action) from pursuing the remedies available under ERISA in federal court. Opposition at 12-13.

6

Fourth, Plaintiff rejects Defendants' assertion that by vigorously defending against Plaintiff's claims they are protecting Plan assets and thereby benefitting the Plan, as well as other beneficiaries, as a whole. Plaintiff argues that the case cited for that proposition, *Davis v. UNUM Life Ins. Co.*, 444 F.3d 569 (7th Cir. 2006), erroneously relied on a principle that had been applied in cases involving trustees administering finite trust funds, even though the *Davis* case involved a private insurer that paid benefits out of its own proprietary assets. *Id*. at 13-14. Plaintiff argues that a private insurer merely protects its own asserts when it defends a claim and therefore, this factor does not supports an award of attorneys' fees to Defendants. *Id*.

## III. ANALYSIS

### A. Whether the Court Should Award Fees and Costs Against Plaintiff Pursuant to 29 U.S.C. § 1132(g)

#### 1. Legal Standard

Under 29 U.S.C. § 1132(g), a court in its discretion may award reasonable attorneys' fees and costs of an action by a plan participant to either party. The Ninth Circuit has held that in exercising this discretion, district courts should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). "No one of the Hummell factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.,1984). While a finding of bad faith may support an award of attorneys' fees, it is not a prerequisite for an award of fees against an ERISA plaintiff. *Credit Managers Ass'n of Southern California v. Kennesaw Life*, 25 F.3d 743, 749 n.3 (9th Cir. 1994). Although the *Hummell* factors apply to both plaintiffs and defendants in ERISA actions, the Ninth Circuit has recognized that they "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Tingey v. Pixley-Richards West, Inc.*, 958

7

F.2d 908, 909 (9th Cir. 1992) (holding that it would be "unjust" to require plaintiffs to pay the defendant's attorneys' fees, even though the defendants had prevailed at the district court level, where plaintiffs were a couple who were caring for their severely disabled son and who were seeking "no more than a recovery of what they believe[d], rightly or wrongly, to be their just benefits").

### 2. Plaintiffs' Culpability, the Relative Merits of Parties' Positions and the Deterrent Effect of An Award of Attorneys' Fees

As a practical matter, Defendants' arguments as to these factors amount to essentially a single argument, that is, that because the evidence in support of denial of Plaintiff's claim was "clear," the Court should award Defendants a portion of their attorneys' fees. In particular, the weakness of Plaintiff's claim, Defendants assert, supports a finding that Plaintiff's pursuit of this litigation was culpable and that an award of attorneys' fees will have no deterrent effect on those seeking to bring meritorious claims (and may even deter plaintiffs who might bring baseless claims). The Court rejects Defendants' position.

#### a. Bad Faith

The Ninth Circuit has held that "in order to avoid a finding of bad faith under the *Hummell* factors, plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim." *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000). While Plaintiff failed to prove her claim on summary judgment, she has pointed to sufficient evidence in the record to show that a reasonable basis existed for her to believe that she could prove her claim. This evidence includes medical evidence from Ms. Jackson's treating doctor, as well as other doctors who examined or treated Ms. Jackson. It also included a finding of disability by the Social Security Administration.

The cases cited by Defendants do not support a contrary conclusion because they involved blatantly fraudulent testimony and/or claims that were found to be frivolous. *See Epstein v. Unum Life Ins. Co.,* 2004 WL 2418310, *1 (C.D.Cal. October 13, 2004) (holding that while fee awards against ERISA plaintiffs are disfavored, facts of that case warranted award to defendant where the

8

plaintiff's testimony was "incredible" and there was evidence in the form a video showing that the plaintiff was "untruthful" as to her symptoms and limitations); *Petri v. Sheet Metal Workers' Nat'l Pension Fund*, 2010 WL 2788185, at \*1 (S.D.N.Y. July 14, 2010) (holding that fee award against plaintiff was warranted because there was no "colorable basis" for plaintiff's claim in light of his own admission that he engaged in disqualifying employment after receiving early retirement benefits and therefore he engaged in culpable conduct); *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 483-86 (2d Cir. 2002) (affirming fee award for defendant in ERISA action based on bad faith where district court found that claimant presented "deliberately false" information on "the most material points" and was "unworthy of belief as to virtually all the material circumstances of his claim"); *Griffeth v. Sheet Metal Workers' Local Unions Local Unions & Councils Plan*, 34 F.Supp.2d 1170, 1173 (D.Ariz. 1998) (awarding fees to defendant in ERISA action based on finding that plaintiff's claim was frivolous). In this case, Defendants concede that Plaintiff's claim was not frivolous. Further, although the district court found that Ms. Jackson's pain testimony was not supported by the medical evidence in the record, it did not make a finding that Plaintiff engaged in the sort of intentional falsehoods that were involved in many of the cases cited by Defendants.

This factor does not support an award of attorneys' fees.

### b. Deterrent Effect of Fee Award

Although the award of attorneys' fees against ERISA plaintiffs is generally disfavored, the Ninth Circuit has held that such an award may serve the purposes of ERISA to the extent that it will "discourag[e] other litigants from relentlessly pursuing groundless claims." *Credit Managers Ass'n of Southern California v. Kennesaw Life*, 25 F.3d 743 at 748. In *Kennesaw Life*, the Ninth Circuit acknowledged that courts often deny requests for fee awards against ERISA plaintiffs. *Id* (citing *Tingey*, 958 F.2d at 909; *Flanagan v. Inland Empire Electrical Workers Pension Plan and Trust*, 3 F.3d 1246, 1253 (9th Cir. 1993)). The court distinguished *Tingey* and *Flanagan*, however, on the basis that those cases involved individual plaintiffs and there were equitable factors that did not support an award of fees. *Id*. In contrast, the plaintiff in *Kennesaw Life* was a court-appointed receiver for four insolvent insurance companies. *Id*. Further, the court in that case found that: 1) the

9

plaintiff could not have had a reasonable belief that it could prevail on its claim because there was no evidence supporting the claim; 2) the plaintiff pursued the case only to extract a settlement; and 3) the plaintiff had the ability to pay a fee award, as was demonstrated by the large amount it had paid to its own attorney. *Id*.

In *Epstein*, the court found that the claimant's testimony was "incredible" in light of video footage showing her engaged in activities that directly conflicted with her testimony as to her limitations. 2004 U.S. Dist. LEXIS 22463, at *3. On that basis, it found that there was bad faith on the plaintiff's part, that the relative merits favored an award of fees to defendants, and that an award of fees to the defendant would advance the goal of deterrence. *Id*. The court cited to *Kennesaw Life* in support of its conclusion that the deterrent effect of an award of attorneys' fees supported such an award, explaining that even thought the plaintiff was an individual, an award of attorneys' fees would serve the purposes of ERISA because the plaintiff had been untruthful and her testimony "incredible," showing bad faith. 2004 U.S. Dist. LEXIS 22463, at * 12-13 (C.D. Cal. 2004).

The facts of this case are distinguishable from those of *Kennesaw Life* and *Epstein*. Unlike the plaintiffs in those cases, the plaintiff here had a reasonable belief that she would prevail on her claim, as discussed above. The district court made no finding of bad faith; nor does the record suggest that Plaintiff pursued her claim in bad faith. Rather, the court concludes that an award of attorneys' fees would not serve the purposes of ERISA because, rather than discouraging plaintiffs who seek to assert frivolous claims, it would likely have a chilling effect on claimants who pursue ERISA claims in good faith.

This factor does not support an award of attorneys' fees.

### 3. Plaintiff's Ability to Pay

Defendants assert that although Plaintiff may not have the ability to pay the full amount of the fees that Defendants incurred in this action, this factor should not bar a partial fee award. In support of this position, Defendants cite *Epstein,* 2004 U.S. Dist. LEXIS 22463, and *Black v. Bresee's Oneonta Dep't Store Sec. Plan*, 919 F.Supp. 597, 604 (N.D.N.Y. 1996). Defendants also point to the overpayment of benefits that resulted from Plaintiff's request for social security

10

disability benefits. The Court rejects Defendants' arguments and finds that this factor does not support an award of attorneys' fees.

In *Epstein*, although the court concluded that the *Hummell* factors, on balance, supported an award of fees and costs against the plaintiff, it found that it was "difficult to determine Plaintiff's ability to pay." *Id*. Therefore, the court ordered the plaintiff to submit a declaration of her family's net worth, including her last three income tax returns. *Id*. at * 3. The court noted that even if the plaintiff's ability to pay was "minimal," this would not bar an award of "some attorneys' fees." *Id*. In support of this conclusion, the court cited to *Little v. Cox's Supermarkets*, 71 F.3d 637, 644-45 (7th Cir.1995), in which the Seventh Circuit upheld an award of $1,000 in attorneys' fees (of a requested $50,000 in fees) against a plaintiff and her attorney, jointly and severally, even though the plaintiff's ability to pay was minimal and her attorney was a solo practitioner. *Id*. In *Epstein*, the court concluded that an award of "some" attorneys' fees was appropriate based on the other *Hummell* factors but did not set a specific amount. *Id*.

This case is distinguishable from *Epstein* because it is not difficult to determine Plaintiff's ability to pay. Rather, Defendants do not dispute that Plaintiff is in bankruptcy proceedings. Nor do Defendants challenge Plaintiff's representation that she has no income other than her social security disability payments, that she is not employed, and that she has no assets with which to pay attorneys' fees. At most, *Epstein* suggests that under the facts of this case, a *nominal* fee award might be allowable if the other *Hummell* factors supported such an award (which they do not). Nothing in *Epstein* supports Defendants' assertion that an award of almost $70,000 in fees and costs is appropriate in light of Plaintiff's financial circumstances.

Defendants' reliance on *Black v. Bresee's Oneonta Dep't Store Sec. Plan* 919 F.Supp. 597, 604 (N.D.N.Y. 1996), is also misplaced. In that case, the court awarded fees in an ERISA action, against a defendant corporation that was found to have unlawfully and unreasonably denied an individual plaintiff pension benefits to which he was entitled, even though the corporation was going through a time of "extreme financial hardship." *Id*. at 605. The court explained its conclusion as follows:

11

> The Court is also cognizant that Bresee's actions were undertaken during a time of extreme financial hardship for the corporation: the Court finds it reasonable to believe that an award of attorney's fees here may well serve to deter other financially strained businesses from taking such unreasonable actions when tempted to do so during uncertain economic times. This is particularly true where, as here, a corporation takes unilateral action against an individual plan participant who must then draw on his own resources, if any, to seek review of the action. If the end result is nothing more than an award of that which plaintiff was plainly entitled to some three years ago, there is no downside whatsoever to attempting to preserve corporate assets at the expense of entitled individual employees.

*Id*.

The considerations that came into play in *Bresee's* are not present here. This case does not involve a request for fees against a corporation that might have an incentive to unreasonably deny ERISA claims made by other beneficiaries simply because of financial difficulties. Nor is Plaintiff's inability to pay outweighed by other equitable factors that make denial of fees unjust, as was the case in *Bresee's*.

Finally, the Court does not find Defendants' reliance on the overpayment to be persuasive. Given that the district court declined to award this amount on summary judgment, there is no authority to suggest that it may be considered as a factor in deciding whether to award fees where, as here, it is apparent that Plaintiff's is unable to satisfy a fee award notwithstanding the overpayment.

This factor does not support an award of fees against Plaintiff. To the contrary, this factor supports the conclusion that the Court should not exercise its discretion to award fees in this case

### 4.     **Whether Award Would Benefit Other Plan Beneficiaries**

Defendants assert that fees should be awarded because, by defending against Plaintiff's claim, they have benefitted other plan beneficiaries by protecting plan assets, citing, *inter alia*, *Davis v. UNUM Life Ins. Co*. 444 F.3d 569, 575 (7th Cir. 2006). Plaintiff argues that in *Davis*, the court erred in applying to a private insurer a principal that arose in the context of "trust-style disability plans," which have a finite trust fund. Plaintiff also points out that the Ninth Circuit has not adopted this line of reasoning with respect to private insurers, and that even in *Epstein*, decided by a district court in the Ninth Circuit, the court only speculated that "an argument could be made" that defending against claims by employees who are "not really disabled" might benefit other employees by keeping costs down. 2004 U.S.Dist. LEXIS 22463, at * 9. The court in *Epstein* ultimately found

12

that this factor did not apply or weighed slightly *against* the defendants' fee request because balanced against any possible benefit to other plan participants was the fact that in defending against the lawsuit, the defendant mainly sought to benefit itself by "prevent[ing] itself from having to pay [the] Plaintiff's benefits." *Id*.

This Court finds that even assuming that defending against a baseless claim by a plan that is administered by a private insurer gives rise to some benefit to other beneficiaries – a question that Court need not resolve here – there is little benefit under the facts here because Plaintiff's claim was not frivolous, as Defendants concede.  Further, any benefits to other beneficiaries that might point in favor of an award are at least balanced by the fact that Defendants, as a private insurance company, were defending against Plaintiff's claims to benefit themselves, as acknowledged by the Court in *Epstein*.

This factor does not support an award of attorneys' fees.

### IV. CONCLUSION

The Court concludes, after considering the factors set forth in *Hummell*, that Defendants should not be awarded any portion of their attorneys' fees and costs.  It is recommended that the Motion be DENIED.

Dated: February 11, 2011

JOSEPH C. SPERO
United States Magistrate Judge

13